UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| FUSE, LLC., | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 4:05CV1326 HEA |
| FUSE ADVERTISING, INC., | ) |
| Defendant. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction, [#3]. Defendant responded to the motion, and a hearing was held before the undersigned on November 15, 2005. After oral arguments were heard, the Court took the matter under submission. Both parties have since submitted to the Court their proposed findings of fact and conclusions of law. For the reasons set forth below, Plaintiff's motion is denied.

## **Introduction**

Plaintiff, Fuse, LLC., moves for a preliminary injunction, alleging that Defendant, Fuse Advertising, Inc., has infringed and continues to infringe Plaintiff's trademark rights by selecting "FUSE" as its principal mark for virtually identical services delivered to identical consumers. Plaintiff contends that years after it began delivering marketing, promotional and advertising services to its customers under the FUSE mark, Defendant began using the FUSE mark to brand its same services to the

same customers in direct competition with Plaintiff. Plaintiff also claims Defendant deliberately chose a font style and color scheme that is nearly identical to the style and appearance of Plaintiff's mark and that Defendant knowingly and willfully selected the uppercase and identically stylized FUSE mark to confuse customers as to the origin of the services. Plaintiffs argue that Defendant's start-up effort to provide marketing services inappropriately utilized Plaintiff's established FUSE mark to acquire business from Plaintiff's customers.

**Facts and Background**

Plaintiff alleges it has continuously been engaged in business marketing and consultation for corporations and other businesses with an emphasis on companies which target youth trends, culture and sports since 1995. Plaintiff has used and displayed the FUSE mark in interstate and foreign commerce in conjunction with its above-described business since it adopted the mark on or about August 1, 1995. Plaintiff claims that by virtue of its long, prominent and exclusive use of the mark since 1995, it has developed considerable brand recognition and goodwill in the FUSE mark, and the mark has acquired distinctiveness and secondary meaning. Plaintiff has averaged approximately $1,000,000.00 per year in sales and delivery of its services in connection with the FUSE mark for at least four years.

In 1999, the United States Patent and Trademark Office (PTO) issued a registration to Plaintiff for the FUSE mark under Registration Number 2,244,175

('175). Plaintiff owns the registration for the FUSE mark for "providing advertising, public relations, marketing and consultation services to all types of business." Plaintiff contends that since it has used the FUSE mark continuously since 1995, the mark is incontestable.

Defendant claims it adopted and began using the FUSE mark in 1997, approximately two years after Plaintiff began its business but two years before Plaintiff's trademark registration for the FUSE mark issued. Defendant has continuously used the mark in connection with advertising and related services provided to clients wishing to target the African American market, a service Plaintiff does not offer.

Plaintiff argues that in 2004, its employees noticed numerous instances of Defendant using the FUSE mark at trade shows, in trade publications and in industry channels. In 2005, Plaintiff learned that Defendant began conducting business with Gillette Corporation, one of Plaintiff's major clients, and that Gillette employees were allegedly confused over which firm utilizing the FUSE mark they were working with on various projects. Defendant, on the other hand, contends there was no confusion on the part of Gillette employees because Gillette and the parties' other customers are sophisticated and are able to distinguish between the specialized, non-competitive services the parties provide.

## Discussion

Preliminary injunctive relief functions to "preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Kansas City Southern Trans. Co., Inc. v. Teamsters Local Union #41*, 126 F.3d 1059 (8th Cir. 1997) (citations omitted). Whether the equitable remedy of a preliminary injunction should issue depends upon four factors:

> (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant should a preliminary injunction be denied; (3) the balance between this harm and the harm that granting the injunction will cause to the other parties litigant; and (4) the public interest.

*Taylor Corp. v. Four Seasons Greetings, LLC* 315 F.3d 1039, 1041 (8th Cir. 2003) (*citing Dataphase Sys., Inc. v. C. l. Sys., Inc.*, 640 F.2d 109, 112-14 (8th Cir. 1981) (en banc). *See also Safety-Kleen Systems, Inc. v. Hennkens* 301 F.3d 931, 935 (8th Cir. 2002). The Court considers all of the factors and decides whether "on balance, they weigh in towards granting the injunction." *Dataphase*, 640 F.2d at 113. The burden of establishing that preliminary relief is warranted is on the party seeking the injunction. *Id*.

## I. Likelihood of Success

### A. Plaintiff's Trademark Infringement Claim

Plaintiff first argues it is likely to succeed on the merits of its federal and state trademark infringement and unfair competition claims, because Plaintiff's FUSE trademark registration is valid and Defendant's continued use of the mark is likely to

cause consumer confusion. *Comidas Exquisitos, Inc. v. O'Malleys & McGees's,* 775 F.2d 260, 261 (8th Cir. 1985) (*citing WSM, Inc. v. Hilton,* 724 F.2d 1320, 1329 (8th Cir. 1984) (liability under the Lanham Act is predicated on use of trademark that is likely to cause confusion). There appears to be no dispute that Plaintiff's trademark is valid, and Plaintiff's Registration No. '175 is evidence of the validity of the FUSE mark and Plaintiff's exclusive right to use it. 15 U.S.C. § 1115. Thus, the issue requires a consideration of numerous factors to determine whether there is a likelihood of confusion.

The Eighth Circuit considers the following factors to determine whether there is a likelihood of confusion: (1) the strength of Plaintiff's mark; (2) the similarity of the parties' marks; (3) the degree to which the services compete with each other; (4) the degree to which Defendant intended to pass off its services as those of Plaintiff's; (5) incidents of actual confusion; and (6) whether the degree of care exercised by the consumer of the services can eliminate a likelihood of confusion that otherwise would exist. *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.,* 182 F.3d 598, 602 (8th Cir. 1999); *Solutech, Inc. v. Soluteck Consulting Services, Inc.,* 153 F. Supp.2d 1082, 1087 (E.D. Mo. 2000) (*citing Minnesota Mining & Manufacturing Company v. Rauh Rubber, Inc.,* 130 F.3d 1305, 1308 (8th Cir. 1997).

**1. Strength**

Plaintiff argues that its FUSE mark is strong "merely by being arbitrary when used in connection with advertising and marketing services." Plaintiff also claims that since it has "spent hundreds of thousands of dollars advertising and promoting its mark and has sold millions of dollars worth of services under that mark" that it is entitled to a greater scope of protection.

Generally, a strong and distinctive trademark is entitled to greater protection than a weak or commonplace one. *SquirtCo v. Seven-Up Co.,* 628 F.2d 1086 (8th Cir. 1980) (*citing J.B. Williams Co. v. Le Conte Cosmetics, Inc.,* 523 F.2d 187, 192 (9th Cir. 1975) *cert. denied,* 424 U.S. 913 (1976)). Yet, "[e]vidence of widespread third-party use, in a particular field, of marks containing a certain shared term is competent to suggest that purchasers have been conditioned to look to the other elements of the marks as a means of distinguishing the source of goods or services in the field." *In re Broadway Chicken, Inc.,* 38 U.S.P.Q.2d 1559 (T.T.A.B. 1996) (*citing In re Bed & Breakfast Registry,* 791 F.2d 157 (Fed. Cir. 1986); *Miles Laboratories, Inc. v. Naturally Vitamin Supplements, Inc.,* 1 U.S.P.Q.2d 1445 (T.T.A.B. 1986); *Fortunoff Silver Sales, Inc. v. Norman Press, Inc.,* 225 U.S.P.Q. 863 (T.T.A.B. 1985); and *ES Loader Boat Trailers, Inc. v. Cox Trailers, Inc.,* 213 U.S.P.Q. 597 (T.T.A.B. 1982), *aff'd,* 706 F.2d 1213 (Fed. Cir. 1983)).

Defendant argues that Plaintiff's mark is weak due to the presence of other users of the FUSE mark in the advertising industry. This Court agrees. Defendant observes

the existence of other advertising agencies throughout the nation which use the FUSE mark, i.e., Fuse Agency, Inc. (Salem, Oregon), Fuse Media Group, Inc. (Mulberry, Florida), T3 Fuse (Austin, Texas & New York), Fuse Advertising and Design (Salt Lake City, Utah), Fuse Communication, Inc. (Birmingham, Michigan), and Fuse Interactive (Laguna Beach, California), in addition to Plaintiff, Fuse, LLC (Burlington, Vermont) and Defendant, Fuse Advertising (St. Louis, Missouri). The presence of such companies using FUSE undermines Plaintiff's argument that its mark is strong. Thus, this Court finds that because there are multiple advertising agencies utilizing FUSE, Plaintiff's FUSE mark is in a crowded field in the advertising industry and is, therefore, weak. Plaintiff has not presented evidence that its mark is strong despite the existence of others using the FUSE mark in the industry. In addition, purchasers of advertising services have been conditioned to look to other factors, including the agency/firm's location and its specialization in the advertising industry, which distinguish the source of advertising services under the FUSE mark.

### 2. Similarity

The similarity of marks is based on an examination of the marks as a whole. *SquirtCo. v. Seven-Up Co.,* 628 F.2d 1086, 1090 (8th Cir. 1980). In assessing "similarity," a court analyzes the overall impression created by the marks. *Luigino's, Inc. v. Stouffer Corp.,* 170 F.3d 827, 830 (8th Cir. 1999). A court attempts to "stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions

of the market and giving the attention such purchasers usually give in buying that class of [services]." *Id.* at 831 (*citing General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622 (8th Cir. 1987)).

Plaintiff claims that the FUSE mark, as used by Defendant, is identical to Plaintiff's FUSE mark and that Defendant has copied Plaintiff's mark in its entirety, spelling and sounding it the same way as Plaintiff's mark.

Defendant admits that the parties marks are similar, in that they use the same letters. Yet, evidence presented at the preliminary injunction hearing supports Defendant's contention that the parties do not display their respective marks in a similar fashion. Plaintiff's FUSE mark is displayed in all capital letters, which are rounded and contoured in a futuristic, contemporary manner (as shown below).



Defendant's FUSE mark, while also displayed in capital letters, consists of block lettering, which appears charred and has a shadow effect, in that each letter of the mark contains a smaller, duplicate letter inside of it (as shown below).

F U S E

While the test for likelihood of confusion is not a side by side comparison, but a general overall impression created in the mind of the consumer, *Harold F. Ritchie,*

*Inc. v. Chesebrough-Pond's, Inc.,* 281 F.2d 755 (2d Cir. 1960), the fact that both FUSE marks are displayed in all capital letters is not enough to show that the overall impression created in the mind of the consumer is that the marks are identical. Standing in the shoes of the ordinary purchaser of advertising services, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying advertising services, the Court cannot conclude that Defendant's use of the FUSE mark is confusingly similar in sight, meaning, services, or commercial impression.

### 3. Degree to Which Services Compete

Plaintiff also alleges the marketing and advertising services offered by the parties are the same, thereby increasing the likelihood of confusion among ordinary purchasers of the services. As stated *supra,* purchasers of advertising services have been conditioned to look to other factors, including the agency/firm's location and its specialization in the advertising industry, which distinguish the source of advertising services under the FUSE mark. The evidence reveals that Plaintiff's business, a Burlington, Vermont-based company, is aimed at marketing to young people, advertising for its clients in the "youth market," including music, fashion, culture, and sports such as skateboarding and snowboarding. Defendant's business, however, is a St. Louis, Missouri-based company, which is aimed at marketing to African-Americans, advertising for its clients in African-American communities, magazines, and other

African-American culture mediums. In fact, Defendant alleges it has never created an advertising campaign that was not targeted exclusively for the African-American market. A potential advertising purchaser who wishes to target either the youth market or the African-American market will know to hire one party's firm but not the other. Again, standing in the shoes of the ordinary purchaser of advertising services and giving the attention such purchasers usually give in buying advertising services, the Court cannot conclude that the services are confusingly similar.

### 4. Intent to Pass Off

Plaintiff argues that Defendant could not have selected the FUSE mark by accident in light of Plaintiff's success and the degree of similarity between the parties' use of the mark. Plaintiff is correct in stating that under 15 U.S.C. § 1072, a party is presumed to have knowledge of registered marks, yet, as Defendant observes, Plaintiff ignores the timing and history of Defendant's adoption and use of the FUSE mark. Defendant's company was incorporated in July, 1997, nearly two years before Plaintiff's federal trademark registration issued. Defendant claims it did not know about Plaintiff when it began using the FUSE mark in 1997,[1] and since it adopted its name nearly two years before Plaintiff received its federal registration, Defendant did not have constructive notice of Plaintiff's registration. 15 U.S.C. § 1072. Plaintiff has

---

[1] In fact, Plaintiff admits it did not learn of Defendant's existence until 2004, nearly seven years after Defendant's company was incorporated.

offered no evidence of Defendant's alleged intent to capitalize and trade on Plaintiff's name recognition and goodwill, and the Court finds no likelihood of confusion in this regard.

### 5. Incidents of Actual Confusion

Plaintiff does not allege incidents of actual confusion in its written motion or proposed findings of fact and conclusions of law. At the hearing, however, Plaintiff alleged there were incidents of actual confusion when employees of Gillette Corporation expressed uncertainty over which FUSE firm they were working with on various projects. Although evidence of actual confusion is not required to prove trademark infringement, it is an effective way to prove a likelihood of confusion. *Hubbard Feeds, Inc.* 182 F.3d at 602. "[W]hen determining whether there exists a likelihood of confusion, weight is given to the number and extent of instances of actual confusion." *Duluth News-Tribune v. Mesabi Pub. Co.,* 84 F.3d 1093, 1098 (8th Cir. 1996) (*citing Life Technologies, Inc. v. Gibbco Scientific, Inc.* 826 F.2d 775, 777 (8th Cir. 1987)). Actual confusion, however, is not conclusive of the existence of a likelihood of confusion. *Woodsmith Pub. Co. v. Meredith Corp.,* 904 F.2d 1244, 1249 (8th Cir. 1990) (*citing Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 668-69 (8th Cir. 1987)).

At the hearing, Plaintiff provided evidence of purported actual confusion by way of the testimony of its own employees regarding statements allegedly made by Gillette

employees. Plaintiff did not present testimony or affidavits of the Gillette employees. Plaintiff's employees claimed Gillette employees referred to Defendant as "the other Fuse" or stated to others that there were two different companies called "Fuse" providing advertising services to Gillette. Defendant argues these statements demonstrate that the Gillette employees were, in fact, not confused, but were able to distinguish between Plaintiff and Defendant's companies. *Duluth News-Tribune,* 84 F.3d at 1098 (question directed to plaintiff's employees as to which News-Tribune he worked for indicates a distinction in the mind of the questioner, rather than confusion). This Court agrees.

Plaintiff's additional testimony that Gillette employees mentioned Defendant's company in a teleconference with Plaintiff's employee is inconclusive. Plaintiff did not identify the Gillette employees, so it is impossible to determine the extent to which those employees participated in the decision to purchase advertising services. The likelihood of confusion must be shown to be among ordinary purchasers of the services. Yet, Plaintiff offered no evidence that the Gillette employees who allegedly made the statements were actual purchasers of Plaintiff's advertising services. *See Electronic Design & Sales, Inc. v. Electronic Data Sys. Corp.,* 954 F.2d 713, 717 (Fed. Cir. 1992) ("The likelihood of confusion must be shown to exist not in the purchasing *institution* but in a 'customer or purchaser.'") (emphasis in original) (*citing Astra Pharmaceutical Prods. v. Beckman Instruments,* 718 F.2d 1201, 1206 (1st Cir. 1983)).

Despite Plaintiff's evidence of alleged actual confusion, there is ample and strong evidence of the parties' long, concurrent use of FUSE without any incidents of actual confusion. Both Plaintiff and Defendant used the FUSE mark for at least seven years before any of the alleged incidents of confusion upon which Plaintiff relies. Thus, this Court finds Plaintiff's evidence of actual confusion to be insufficient.

### 6. Degree of Care Exercised by Consumer

Plaintiff argues that although the parties sell their services to large corporations, the very size of those corporations increases the likelihood of confusion. Plaintiff's argument is not well-taken. As Defendant observes, purchasers of advertising services are sophisticated consumers who exercise a high degree of care in purchasing decisions. A purchaser of advertising services will seek out agencies which specialize in the type of advertising service the purchaser seeks to create and the markets the purchaser wishes to reach, such as advertising aimed toward the youth market versus the African-American market. This degree of care, therefore, obviates the likelihood of confusion. *See Electronic Design & Sales,* 954 F.2d at 718 (no likelihood of confusion where the parties' goods and services are usually purchased after careful consideration by persons who are highly knowledgeable about the goods or services and their source). As such, Plaintiff has failed to show a likelihood of confusion in this regard. This Court finds that Plaintiff has failed to show that it is likely to succeed on the merits of its trademark infringement claim.

## B. Plaintiff's Trademark Dilution Claim

With regard to its Missouri State claim of dilution, Plaintiff merely repeats its argument that it has spent thousands of dollars promoting its mark, making it strong and distinctive. By using the same mark, Plaintiff claims that Defendant is improperly stripping Plaintiff of its rights to manage and protect the mark, and that Defendant has tarnished and diluted the distinctive quality of the mark.

In order to succeed on the merits of a trademark dilution claim under Missouri law, Plaintiff must demonstrate that (1) the FUSE mark is valid at common law; (2) the FUSE mark is distinctive; and (3) Defendant's use of the FUSE mark creates a likelihood of dilution of the distinctive quality of that mark. *Gilbert/Robinson, Inc.,* 758 F. Supp. 512, 527 (E.D. Mo. 1991). The gravamen of a dilution complaint is that the continuing use of a mark similar to a plaintiff's mark will inevitably have an adverse effect upon the value of the plaintiff's mark and that if he is powerless to prevent such use, the plaintiff's mark will eventually be deprived of all distinctiveness. *Id.* The dilution theory, however, is only applicable if a plaintiff's mark is arbitrary, coined, fanciful or has become distinctive by acquiring a secondary meaning. *Id.* (*citing WSM, Inc. v. Hilton,* 724 F.2d 1320, 1332 (8th Cir. 1984); *Midwest Research Institute v. S & B Promotions,* 677 F. Supp. 1007, 1017 (W.D. Mo. 1988)).

As has already been determined, Plaintiff's mark is weak due to the presence of other users of the FUSE mark in the advertising industry. The existence of other

advertising agencies throughout the nation which use the FUSE mark, i.e., Fuse Agency, Inc. (Salem, Oregon), Fuse Media Group, Inc. (Mulberry, Florida), T3 Fuse (Austin, Texas & New York), Fuse Advertising and Design (Salt Lake City, Utah), Fuse Communication, Inc. (Birmingham, Michigan), and Fuse Interactive (Laguna Beach, California), in addition to Plaintiff, Fuse, LLC (Burlington, Vermont) and Defendant, Fuse Advertising (St. Louis, Missouri) undermines Plaintiff's argument that its mark is strong. Thus, this Court finds that because there are multiple advertising agencies utilizing FUSE, Plaintiff's FUSE mark is in a crowded field in the advertising industry and is, therefore, weak. Plaintiff has not presented evidence that its mark is strong despite the existence of others using the FUSE mark in the industry. In addition, purchasers of advertising services have been conditioned to look to other factors, including the agency/firm's location and its specialization in the advertising industry, which distinguish the source of advertising services under the FUSE mark. As such, Defendant's continued use of the FUSE mark does not create a likelihood of dilution. Therefore, Plaintiff has failed to show a likelihood of success on the merits of its dilution claim to support the emergency relief of a preliminary injunction

### C. Defense of Latches

Defendant argues that Plaintiff's claims are barred by the doctrine of laches. Although the issue need not be addressed in light of the Court's conclusions above, the Court will speak to the issue for the satisfaction of the parties.

To invoke the doctrine of laches, Defendant has the heavy burden of showing prejudice because of delay as well as the inexcusable character of delay. *Gilbert/Robinson, Inc.,* 758 F. Supp at 525. The mere passage of time is not sufficient to constitute laches. Defendants must show that it relied upon Plaintiff's knowledge or notice of its infringing activities and that it would now be inequitable for the Court to enforce Plaintiff's rights in its trademark. *Id.* at 525-26. It is only where the delay is so prolonged and inexcusable that it amounts to a virtual abandonment of the right by Plaintiff for a long period of time that the balance of the equities would favor the knowing infringer.

Despite the recognition of Defendant and its mark in trade journals, the evidence shows that Plaintiff did not discover Defendant's use of FUSE until 2004. This cause of action was filed in 2005. The Court, therefore, finds that Plaintiff's delay was not unreasonable, nor inexcusable and that Defendant did not undertake activities in reliance on the delay. Thus, Defendant's affirmative defense fails.

## II. Irreparable Harm

Plaintiff contends the potential damage to its rights in the FUSE mark is clear, irreparable and imminent if Defendant continues to promote its services using the FUSE mark. A showing that confusion is likely supports a strong presumption of irreparable harm. *Coca-Cola Co. v. Purdy,* 382 F.3d 774, 789 (8th Cir. 2004); *Calvin Klein Cosmetics Corp., v. Lenox Laboratories, Inc.,* 815 F.2d 500, 505 (8th Cir. 1987). As

has already been determined, however, there has been no showing of a likelihood of confusion. While Plaintiff need not point to any specific lost sales or business, *Solutech, Inc.,* 153 F. Supp.2d at 1082, 1088 (E.D. Mo. 2000), Plaintiff has failed to present evidence that it has been harmed, even throughout the purported seven years of concurrent use of the FUSE mark by the parties. Thus, this Court cannot find the existence of irreparable injury in this case.

### III. Balance of Hardships

As stated, Plaintiff has failed to show that it has been harmed and/or that it will suffer irreparable injury if Defendant is allowed to continue its use of FUSE as its mark. On the other hand, Defendant, it appears, would suffer harm if they are enjoined from using FUSE, its business name, since it has been using FUSE for over eight years and has received national recognition for its work. Customers seeking advertising services hire Defendant because of its specialization, and a name change pending trial would require Defendant to educate the market in order to avoid confusing Defendant's existing and potential clients. The balance of hardships, therefore, weighs in favor of denying the preliminary injunction.

### IV. Public Interest

Finally, Plaintiff argues that because the public has a substantial interest in being free from confusion, the public interest strongly favors injunctive relief. In this case, however, the public interest would not be served if Defendant were forced to surrender

its trade name on insufficient evidence of infringement, confusion, and harm. As observed by Defendant, the parties have coexisted for years, as have other companies with the FUSE name, and there is little evidence of confusion on the part of advertising purchasers. On the other hand, the confusion among advertising purchasers that would be brought about by Defendant's name change would likely be greater than any confusion that would be caused by allowing the parties to continue their concurrent use of FUSE pending a full trial on the merits of Plaintiff's claims.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction, [#3], is denied.

Dated this 15th day of February, 2006.

*[signature]*

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE